IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KEVIN KASTEN,

                                                                OPINION AND ORDER
                    Plaintiff,
                                                                07-cv-686-bbc[1]
          v.

SAINT-GOBAIN PERFORMANCE
PLASTICS CORPORATION,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In December 2007 plaintiff Kevin Kasten filed this civil action alleging that defendant Saint-Gobain Performance Plastics Corporation's decision to terminate plaintiff's employment was a form of retaliation against him in violation of 29 U.S.C. § 215(a)(3). Jurisdiction is present.  28 U.S.C. § 1331.  Currently before the court is defendant's motion for summary judgment, which will be granted.  I conclude that plaintiff did not engage in any protected activity listed in § 215(a)(3).

---

[1]This case and <u>Kevin Kasten et al. v. Saint-Gobain Performance Plastics Corporation</u>, No. 07-cv-449-bbc (W.D. Wis. filed Aug. 15, 2007), were consolidated on January 29, 2008. On May 13, 2008, the cases were severed in accordance with a stipulation filed by the parties.

From both parties' proposed findings of fact, I find that the following facts are material and undisputed.

UNDISPUTED FACTS

Defendant Saint-Gobain Performance Plastics Corporation is a corporation that manufactures a variety of high-performance polymer products.  Defendant's principal place of business is in Akron, Ohio; it maintains and operates a manufacturing and production facility in Portage, Wisconsin.

Plaintiff Kevin Kasten worked for defendant at its Portage facility from October 2003 until December 2006.  He was an hourly manufacturing and production worker who worked both first and third shifts.  He worked as a Fabricator, Mill Room Utility and Setup Utility.

On February 13, 2006, plaintiff received a "Disciplinary Action Warning Notice-Verbal Counseling Warning" from defendant because of several "issues" plaintiff had during January 2006 regarding punching in and out on the Kronos time clocks.  (The parties do not submit facts regarding the exact nature of plaintiff's "issues.")  The notice stated in part that "[i]f the same or any other violation occurs in the subsequent 12-month period from this date of verbal reminder, a written warning may be issued."

On August 31, 2006, plaintiff received a "Disciplinary Action Warning Notice - Step 2 Policy Violation - Written Warning" from defendant, again related to problems punching

in and out on the Kronos time clocks.  The notice stated in part that "[i]f the same or any other violation occurs in the subsequent 12-month period from this date [sic] will result in further disciplinary action up to and including termination."  On November 10, 2006, plaintiff received a "Disciplinary Action Warning Notice - Step 3 Policy Violation - Written Warning" accompanied by a "One Day Disciplinary Suspension" from defendant for his failure to clock in and out on the Kronos time clocks on October 31, 2006.  The notice stated in part that "if the same or any other violation occurs in the subsequent 12-month period from this date [sic] will result in further disciplinary action up to and including termination."

On December 6, 2006, defendant suspended plaintiff on the ground that he had violated defendant's policy regarding time clock punches for a fourth time.  On December 11, 2006, defendant's Human Resources Manager, Dennis Brown, told plaintiff over the phone that defendant had decided to terminate his employment.  On December 19, 2006, defendant's Human Resources Generalist, Lani Williams, wrote plaintiff a letter confirming his termination and explaining that plaintiff's termination was in response to his repeated punch in and punch out violations.

On September 12, 2007, plaintiff filed a wage and hour complaint against defendant with the Equal Rights Division of the Wisconsin Department of Workforce Development alleging that defendant had wrongfully terminated him.  On December 5, 2007, plaintiff

3

filed this lawsuit, alleging that defendant terminated his employment in violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3).

DISPUTED FACTS

The parties dispute whether plaintiff complained to his supervisors about the legality of the location of defendant's time clocks because the location meant that employees were not being paid for all time spent donning and doffing required protective gear.  Some of plaintiff's specific allegations are that: (1) in September or October 2006 he told Dennis Woolverton that he believed the locations of defendant's time clocks were illegal; (2) at a meeting with Lani Williams (whose last name at the time was Wruck) he told her that the location of defendant's time clocks were illegal and that if defendant was challenged in court regarding time clock location "they would lose,"; (3) on three or four occasions during the last few months of 2006 he told April Luther that the locations of defendant's time clocks were illegal; (4) sometime in October 2006 he told Luther that he was thinking of starting a lawsuit about the location of defendant's time clocks; and (5) during the December 6, 2006, meeting regarding plaintiff's suspension, he told Dennis Brown and Mr. Stanford that he believed that the location of defendant's time clocks were illegal and that if defendant was challenged in court regarding time clock location it would lose.

Defendant denies that plaintiff ever told any of his supervisors or any human

4

resources personnel that he believed that the time clock locations were illegal.

OPINION

Plaintiff brought this action against defendant under the Fair Labor Stanard Act's anti-retaliation provision.  29 U.S.C. § 215(a)(3).  Under that provision:

it shall be unlawful for any person—

to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]

Defendant contends that it is entitled to summary judgment because even if the court were to accept as true plaintiff's proposed facts regarding his oral complaints to his supervisors, plaintiff did not file any complaint and thus, did not engage in any protected activity listed under § 215(a)(3).  Conversely, plaintiff contends that his oral complaint to his supervisors served as an assertion of his rights under the FLSA and that such an assertion is a complaint protected by the anti-retaliation provision.

The issue is whether plaintiff's oral complaint is a protected activity under the FLSA anti-retaliation provision's "filed any complaint" language.  I conclude that it is not. Although the plain language of § 215(a)(3) appears to delineate which activities trigger the protection of the statute, there is a split among the circuits regarding what form employee

5

complaints must take to be protected under language of the statute.  Jennifer Clemons, FLSA
Retaliation: A Continuum of Employee Protection, 53 Baylor L. Rev. 535 (2001) (discussing
different approaches taken by different circuit courts toward FLSA's anti-retaliation
provision).  The Court of Appeals for the Seventh Circuit has never addressed the issue
directly.  See Crowley v. Pace Suburban Bus Division of the Regional Transportation
Authority, 938 F.2d 797, 798 n.3 (7th Cir. 1991) (noting that although other circuits had
construed anti-retaliation provision broadly to cover activities not listed in language of
provision, that issue was not being addressed in case before court); see also Sapperstein v.
Hager, 188 F.3d 852, 857 (7th Cir. 1999) (noting that language in anti-retaliation provision
is very broad and that filing claim with state Department of Labor qualified as protected
activity, but not discussing what other activities are protected under statute).

        The disagreement among courts that have directly addressed the issue generally
centers on whether an informal complaint triggers the statute's protection.  At one end of
the spectrum are the courts that have determined that § 215(a)(3) protects informal
complaints under the courts' interpretation of the anti-retaliation provision as protecting any
activity by a worker constituting an assertion of an FLSA right, including mere oral
complaints to supervisors when the basis for the complaining concerns something regulated
by the FLSA.  For example, in Love v. RE/MAX of America, 738 F.2d 383, 387 (10th Cir.
1984), the Court of Appeals for the Tenth Circuit interpreted the FLSA's anti-retaliation

6

provision to apply "to the unofficial assertion of rights through complaints at work."  In

Equal Employment Opportunity Commission v. Romeo Community Schools, 976 F.2d 985,

989 (6th Cir. 1992), the Court of Appeals for the Sixth Circuit relied on Love in

determining that the plaintiff's verbal complaint to her employer about being paid lower

wages than male employees was a protected activity under the FLSA's anti-retaliation

provision.

    At the other end of the spectrum are the courts that have interpreted the retaliation

provision to protect only the filing of formal complaints with a labor agency or a court.  For

example, in Lambert v. Genesee Hospital, 10 F.3d 46, 55 (2d Cir. 1993), the Court of

Appeals for the Second Circuit determined that an employee's oral complaint to a supervisor

about deficient pay was not an activity protected under the "plain and unambiguous"

language of the statute because it was not a formal complaint filed with a labor agency or a

court.  Other courts have fallen in the middle of the spectrum.  See, e.g., Valerio v. Putnam

Associates Inc., 173 F.3d 35, 44 (1st Cir. 1999) (holding that FLSA's retaliation provision

protects employees who "filed a sufficient complaint with an employer"); Lambert v. Ackerly,

180 F.3d 997, 1007 (9th Cir.  1999) (reasoning that although "not all amorphous

expressions of discontent related to wages and hours constitute complaints filed within the

meaning of § 215(a)(3)[,]" the plaintiffs had clearly filed a complaint because they "not only

complained orally to their employers . . . [but] also contacted the Department of Labor, . .

. hired an attorney to assist them with their claim, and notified their employer in writing of the specific FLSA violation they were alleging.").

Plaintiff would have this court follow those that have construed the statute so broadly as to include oral complaints alone as a protected activity, but those courts appear to have simply ignored the statute's use of the word "filed," perhaps because they focused on whether the statute protects informal or formal complaints and on the desire to effectuate the remedial purpose of the statute.  See, e.g., Hernandez v. City Wide Insulation of Madison, Inc., 508 F. Supp. 2d 682, 689-90 (E.D. Wis. 2007) (noting that FLSA must be construed broadly as protecting mere oral complaints to effectuate statute's remedial purpose).  I agree that the remedial nature of the FLSA justifies a broad interpretation of its provisions.  Sapperstein, 188 F.3d at 857.  However, the plain language of the statute should not be disregarded.  Statutory interpretation begins with "the language of the statute itself [and] [a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive."  Id. (internal quotation omitted).  I cannot ignore the explicit language Congress used in writing the statute.

Instead, taking into consideration the statute's explicit language as well as its remedial purpose and the pertinent case law, I believe that a middle-of-the-road approach is best. That path leads to the following conclusion: the FLSA's anti-retaliation provision protects more informal complaints, including those made to employers, so long as they are in writing

8

and are filed.  I agree with the contention that the plain language of statute cannot be read to limit protected activity to formal complaints filed with either a labor agency or a court. The language of the statute covers employees that "file[] *any* complaint."  29 U.S.C. § 215(a)(3) (emphasis added).  Therefore, complaints filed with an employer are covered under the provision's "any" complaint language.

However, the plain language of § 215(a)(3) requires that the complaint be "filed." Expressing an oral complaint is not the same as filing a complaint.  By definition, the word "file" refers to "a collection of papers, records, etc., arranged in convenient order," Random House Webster's College Dictionary 489 (2d ed. 1999), or, when used in verb form as it is in the statute, "[t]o deliver (a paper or instrument) to the proper officer so that it is received by him to be kept on file, or among the records of his office," Webster's New International Dictionary of the English Language 945 (2d ed. 1958).  One cannot "file" an oral complaint; there is no document, such as a paper or record, to deliver to someone who can put it in its proper place.  An oral complaint can become a filed complaint only if it is committed to document form.  Nothing in the plain language of the provision suggests that it would be improper to interpret the use of the word "filed" as requiring that a complaint be more than an oral complaint.  See, e.g., Clevinger v. Motel Sleepers, Inc., 36 F. Supp. 2d 322, 324 (W.D. Va. 1999) ("The word 'filed' clearly denotes a procedure other than oral.").  At a minimum, an employee's complaint must be provided to his employer in some documented

9

form, such as a letter, for the complaint to be considered "filed" and fall under the protection of the FLSA's anti-retaliation provision.  (Whether an email would qualify for "filing" is an issue I need not reach in this case.)

By plaintiff's own admission, he did not file a complaint with any person or any agency until eight months after his employment was terminated.  If, as he says, he complained orally to his superiors, his doing so was not enough to trigger the protection of the FLSA's anti-retaliation provision.  Telling his supervisors that he believed that the locations of defendant's time clocks were illegal or even that he was thinking about starting a lawsuit regarding time clock location would not fulfill the requirement of filing a complaint under the FLSA's anti-retaliation provision.  At most, plaintiff's oral complaining was "abstract grumbling," Valerio, 173 F.3d at 44, or an "amorphous expression of discontent," Ackerley, 180 F.3d at 1007, regarding the location of defendant's time clocks.  Therefore, even accepting all the disputed facts proffered by plaintiff and viewing them in a light most favorable to him, I conclude that he did not engage in a protected activity under § 215(a)(3) and defendant is entitled to summary judgment on plaintiff's FLSA retaliation claim.


ORDER

IT IS ORDERED that:

1.  Defendant Saint-Gobain Performance Plastics Corporation's motion for summary

10

judgment (dkt. #58) is GRANTED.

2. The clerk of court is directed to enter judgment in favor of defendant.

Entered this 18th day of June, 2008.

BY THE COURT:


/s/
_____
BARBARA B. CRABB
District Judge

11